[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION TO SET ASIDE THE VERDICT
The defendant seeks to set side the verdict because it is against the evidence and the lawn in that the jury awarded the plaintiff economic damages in the amount of $33,815.00 when there was no basis in the evidence to support more than $6,334.08 ($5,624.00 in medicals and $700.00 in lost wages). CT Page 8771
 I
The defendant correctly points to the fact that the plaintiff not only introduced no evidence of the estimated cost of future medical care but offered no expert testimony to support the need for such treatment. The defendant quite properly relies on our supreme court's analysis inMarchetti v. Ramirez, 240 Conn. 49 (1997). Clearly, this case is controlling.
In Marchetti, the injured plaintiff had surgery for a cervical removal and fusion. His several physicians assigned him significant though varying percentages of permanent partial disability. One of the physicians opined that it was likely that the plaintiff would incur future medical expenses for his injuries. There was no testimony from any of these witnesses that it was reasonably probable that the plaintiff would incur such expenses.
In reaffirming the viability of the reasonable probability standard the court held that under the facts of the case the standard had been satisfied. The specific evidence which the court found persuasive was the testimony of the orthopaedic surgeon who had treated the plaintiff up to the time of trial. This orthopedist expressed the opinion that the plaintiff would require future medical treatment for his injuries on an "as needed basis". However, no estimate was given as to the nature, extent or frequency of the treatment, or its cost.
In this case, the plaintiff's orthopaedic physician, Dr. William Lewis opined in his report of January 22, 1998 as follows: "Prognosis: this patient will continue aching cervical and lumbar pain particularly in damp or cold weather. The precursors for degenerative arthritis of the cervical and lumbar spine have been established by the trauma of the accident."
Dr. Lewis then went on to assign the plaintiff permanent partial impairments of 5% of the cervical and 5% of the lumbar spine.
From this testimony it is fair to conclude that Dr. Lewis was certain that the plaintiff would experience aching in her neck and back especially when the weather is damp or cold. Dr. Lewis placed no time limit on these events nor, as in Marchetti, did he explicitly describe the nature, extent, frequency or cost of the treatments that would be necessary to alleviate the aching. The only material difference between this case and Marchetti is that in Marchetti there was medical testimony of the need for future medical treatment whereas in this case there was no such explicit testimony. CT Page 8772
The purpose of the reasonable probability rule is to remove the issue of need for future medical treatment from the realm of speculation and conjecture. Marchetti v. Ramirez supra at 55.
The court notes that it charged the jury as follows: "You are not to award damages which are speculative remote or conjectural. All that is required is that the evidence, with such certainty as the nature of the case may permit, lays a foundation which will enable you to make a fair and reasonable estimate".
The essential inquiry in this case then is whether because of the absence of explicit medical testimony as to the need for future medical treatment it was reasonable for the jury to draw the inference of such need from the predicate evidence described above or whether such an inference should be characterized as speculative or conjectural. The court believes that under the circumstances of this case it was entirely reasonable for the jury to have drawn such an inference.
In Marchetti, the court recognized the appropriateness of a jury using the cost and frequency of past medical treatment as a yardstick for future expenses "if it can be inferred that the plaintiff will continue to seek the same treatment in the future". Id at 56 (Emphasis added).
In this case the evidence showed that the plaintiff received several different forms of physical therapy on a regular basis from August through early November, 1997. Thereafter, on April 7, 1999 she presented to a chiropractor, Dr. Adam Propper, with complaints of back pain aggravated by long periods of standing which interfered with her work and daily routine. Significantly, and consistent with Dr. Lewis' prognosis she stated to Dr. Propper that the pain "comes and goes". While this visit was but a single event occurring about one and a half years after the injury it is evidence of the continuing, time to time, need for medical treatment subsequent to the plaintiff's discharge from Dr. Lewis.
Thus, in the face of evidence of "continue[d] aching particularly in damp or cold weather," coupled with the establishment of the "precursors for degenerative arthritis", the plaintiff's testimony at trial that her pain persisted, and the obvious discomfort that the plaintiff displayed on the witness stand, it was reasonable for the jury to have inferred that future medical treatment on an as needed basis would be required over the course of the plaintiffs life expectancy of 58.5 years.
For these reasons the motion is denied.
 II CT Page 8773
At the outset of the defendant's oral argument in support of her motion the defendant's attorney made reference to an affidavit which he had in his possession which had been obtained from one of the jurors after the jury had been discharged. State v. Pare, 253 Conn. 611,634 (2000).
According to the attorney, the affidavit was obtained by an investigator engaged by the defendant's insurer, All State Insurance Company. The affidavit was offered in an effort to impeach the jury verdict, ostensibly by showing how the jury arrived at its award of economic damages. The court declined to consider or accept the affidavit because its contents concerned the mental processes by which the verdict was determined in violation of P.B. § 16-34. More importantly the court criticized the process pursuant to which this affidavit was obtained, expressing disapproval of a practice which intrudes upon the secrecy of jury deliberations. Concerned that the absence of a Practice Book rule subjecting post verdict juror contact to judicial supervision could lead to abuses the court, sua sponte, hereby orders that the parties appear before the undersigned on August 14, 2000 at 2:00 p.m. prepared to respond to an inquiry of the facts concerning the insurer's post verdict contact with the jury.
 THE COURT A. WILLIAM MOTTOLESE, J.